McIlvaine, J.
Was the plaintiff in the original action entitled to have interest at the rate of six per centum per annum, from the maturity of the note to the date of judgment, included in the judgment?
The First National Bank of Galion was.organ!zed within the State of Ohio, under the act of Congress of June 3, 1864, commonly called the national currency act. The 30th section of this act provides certain rules by which the rate of interest is to be ascertained and fixed, which national banks are allowed to take, receive, reserve, aud charge on loans and discounts made on notes, bills of exchange, or other evidences of debt, and then declares that “ the knowingly taking, receiving, reserving, or charging a rate of interest greater than aforesaid, shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon.” According to our understanding of this provision, it is made the duty of the court having jurisdiction of an action brought on a note, bill, or other evidence of debt, discounted by a national bank at a rate of interest greater than that allowed by law, or if an agreement has been made to pay such greater rate of interest thereon, to hold and adjudge the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon, to be forfeited; as well, *513 the interest accruing after maturity and before judgment,, as the interest which accrued before the maturity thereof.
The rate of interest, which the note in this action carried with it, and which was agreed to be paid thereon, was- “ eight per cent, from date.” Was this rate of interest greater than that allowed to the defendant in error under-the rules established-by section 30 of the currency act?
The section reads as follows:
“ That every association may take, receive, reserve, and charge on any loan or discount made upon any note, bill of exchange, or other evidences of debt, interest at the rate-allowed by the laws of the state or territory where the-bank is located, and no more, except that where, by the-’ laws of any state, a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized in any such state under this act, and when no rate is fixed by the laws of the state or territory, the bank may take, receive, reserve,, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run.”
It is quite certain, we think, that the defendant in error was limited, by the provisions of this section, in its right-to take or charge interest on its loans and discounts, either to the rate of interest fixed by the first rule named therein,, or to the rate fixed by the exception to that rule. In other words, it was limited to the rate of interest allowed by the state laws to banks of issue organized under the laws of the state, if the rate so allowed was different from' the general rate allowed by the laws of the state; but if there was-no difference between such rates, or if there was no rate limited for banks of issue organized under state laws, then, and only then, was the defendant in error entitled to take or charge the general rate allowed by the laws of the state.
By the act of the legislature of this state, passed March 21, 1851, known as the free banking act (S. & C. 168), and. also the act of March 9,1850 (S. & C. 149), which contain *514 special provisions for the organization and regulation of banks of issue, and limit their powers in respect to taking •and charging interest on loans and discounts, the maximum rate allowed is fixed at six per centum per annum in advance. Such also was the rule under the act of February 24,1845, known as the State Bank of Ohio act (S. & O. 117), which was in force at the date of the passage of the national currency act. Indeed, the general policy of the state has ever been to limit the rate of interest allowed for banking corporations at six per centum per annum. True, we are not advised in the record of this case whether banks organized under the act of March 21,1851, or under .any other statute, are still engaged in issuing bank paper. But we suppose it matters not, as' that act, at least, is still in force.
Now, from what we have already said, it must follow that ■national banks located iu this state are limited by the six per ceut. rule thus established by these special enactments, unless the provisions of the first section of the geueral act of May 4, 1869 (66 Ohio L. 91), extend to and embrace banks of issue organized under those special and particular statutes. It provides “ that the parties to any bond, bill, promissory note, or other instrument of writing for the forbearance or payment of money at any future time, may ■stipulate therein for the payment of interest upon the ■amount of such bond, bill, note, or other instrument of writing, at any rate not exceeding eight per centum per .annum payable annually.”
Although the terms of this section are sufficiently comprehensive to include banks of issue among the parties .authorized to stipulate for eight per cent, interest, yet inasmuch as this statute was passed as a substitute for one that ■clearly did not relate to such banks, and, inasmuch as the provisions of prior statutes specially limiting the rate of interest allowed to such banks were not expressly repealed or modified thereby, we are of opinion that the legislature did not intend to change the rule or enlarge the powers of banking corporations in respect to the taking or charging of inter *515 •est on loans and discounts. In thus holding, we adopt and approve the principle of the rule laid down in Fosdick v. Perrysburg, 14 Ohio St. 472, and other cases, to wit: “That a subsequent statute treating a subject in general terms, and not expressly contradicting the provisions of a prior act, shall not be considered as intended to affect the more particular and positive provisions of the prior act, unless it be absolutely necessary to do so in order to give' its words any meaning.”
Our attention has been called to the case of Parks et al. v. First National Bank of Missouri, as reported in the Bankers’ Magazine (from July, 1870, to June, 1871), page 416, wherein it is said that the Circuit Court of the United States for Missouri held, in substance, that a national bank located in a state where one rate of interest is allowed by law generally, and another is fixed for banks of issue organized under the state laws, may take, receive, reserve, or charge the greater rate. We can not approve this construction of the 30th section of the national currency act. The clause, “except where by the laws of any state a different rate is limited for banks of issue’ organized under state laws, the rate so limited shall be allowed for associations organized in any such state under this act,” is not a mere qualification of the preceding phrase “and no more.” But, on the contrary, it was intended as an exception to the preceding rule, and as a substitute for such rule in all cases where a national bank is located in a state where a different rate of interest is fixed for local banks, from that allowed generally. We are satisfied that Congress not only intended to place national banks and state banks upon a perfect equality in this respect, but further intended to adopt the policy and views of the people of the several states as expressed by their legislation in regard to the rate of interest to be allowed for banking corporations.
The judgment of the District Court must he reversed, and unless the defendant in error, within thirty days, remit from the judgment of the Court of Common Pleas all in *516 terest included therein, that judgment will also be reversed.
White, C. J., and West, J.. concurred. Day, J., did not sit in this case.